## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

DISH NETWORK L.L.C., et al.,    )       CASE NO. 1:14-cv-1581
                            )
                            )
            PLAINTIFFS,    )       JUDGE SARA LIOI
                            )
v.                            )
                            )       MEMORANDUM OPINION
DONALD SINGH,           )
                            )
                            )
            DEFENDANT.    )

Presently before the Court is plaintiffs' motion for default judgment, statutory damages, and permanent injunction against defendant Donald Singh ("Singh" or "defendant"), pursuant to Fed. R. Civ. P. 55(b)(2), for violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511 *et seq.* ("ECPA").[1] (Doc. No. 8 ["Motion"] and Doc. No. 8-1 ["Memorandum"].) The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331. Defendant has not responded to the motion. For the reasons that follow, plaintiffs' motion is GRANTED.

### I. BACKGROUND

Plaintiffs DISH Network L.L.C., EchoStar Technologies L.L.C., and NagraStar L.L.C. (collectively, "DISH Network") allege that defendant Singh unlawfully circumvented the DISH Network's security system and intercepted encrypted,

---

[1] Plaintiffs' three count complaint alleges violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.* (Count I), Federal Communications Act, 47 U.S.C. § 605 *et seq.* (Count II), and EPCA (Count III). (Doc. No. 1 ["Compl."].) Plaintiffs move for default only as to Count III, representing to the Court that Counts I and II will be dismissed if the Court grants relief to plaintiffs as to Count III. (Memorandum at 55 (All page number references are to the page identification numbers generated by the Court's electronic filing system.).)

copyrighted, subscription-based DISH Network satellite television programming. Defendant accomplished this by subscribing to two pirate television services known as IKS Rocket and Fish TV, which provided defendant with the information needed to decrypt DISH Network's satellite signal and view DISH Network programming without authorization from or payment to DISH Network.

The following facts are derived from plaintiffs' well-pleaded allegations in DISH Network's complaint and documents provided in support of DISH Network's motion:

DISH Network is a multi-channel video provider that delivers video, audio, and data services to approximately 14 million customers via a direct broadcast satellite system. DISH Network uses high-powered satellites to broadcast, among other things, movies, sports and general entertainment services to consumers who have been authorized to receive such services after payment of a subscription fee, or in the case of a pay-per-view movie or event, the purchase price. (Compl., ¶¶ 9-10 at 3.)

DISH Network contracts for and purchases the distribution rights for most of the programming broadcast on the DISH Network platform from providers such as network affiliates, motion picture distributors, pay and specialty broadcasters, cable networks, sports leagues, and other holders of programming rights. The works broadcast on the DISH Network platform are copyrighted. DISH Network has the authority of the copyright holders to protect these works from unauthorized reception and viewing. (Compl., ¶¶ 11-12 at 3.)

A DISH Network satellite television system consists of a compatible dish antenna, receiver, smart card, television, and cabling to connect the components. Plaintiff

EchoStar Technologies provides receivers, dish antenna, and other digital equipment for the DISH Network system. Smart cards and other proprietary security technologies that form a conditional access system are supplied by plaintiff NagraStar. (Compl., ¶ 14 at 4.)

DISH Network programming is digitized, compressed, and scrambled prior to being transmitted to multiple satellites in orbit above Earth. The satellites then relay the encrypted signal back to Earth where it can be received by DISH Network subscribers that have the necessary equipment. The EchoStar Technologies receiver processes an incoming DISH Network satellite signal by locating an encrypted part of the transmission, known as the entitlement control message, and forwards that message to the NagraStar smart card. Provided the customer is tuned to a channel he or she is authorized to watch, the smart card uses its decryption keys to unlock the message, uncovering a control word. The control word is transmitted back to the receiver in order to decrypt the DISH Network satellite signal. (Compl., ¶¶ 13, 17-18 at 3-4.)

IKS Rocket and Fish TV are Internet key sharing ("IKS") services which provide subscribing end-users with the control words needed to descramble DISH Network television programming without authority and without payment of a subscription fee to DISH Network. (Compl., ¶ 25 at 6.)

Defendant has circumvented DISH Network's security system and received DISH Network's satellite broadcasts of copyrighted television programming without payment of the required DISH Network subscription fee. Defendant accomplished this by subscribing to IKS Rocket for one year around January 1, 2012, and purchasing a subscription to Fish TV around April 2013. Through IKS Rocket and Fish TV, defendant obtained DISH Network's control words which he intentionally used to

3

intercept DISH Network's satellite signal and view DISH Network programming without authorization. Defendant violated ECPA by obtaining DISH Network's control words through the IKS Rocket and Fish TV services and using them to intentionally intercept DISH Network programming. (Compl., ¶¶ 8, 26-27, 39-41 at 2-3, 6-7, 9; *see also* Doc. No. 8-2 (Declaration of Thomas Dixon ["Dixon Decl."], ¶¶ 11-12 at 58-59, and Doc. No. 8-3 (Declaration of Steven Rogers ["Rogers Decl."]), ¶¶ 2-5 at 67-69.)

## II. DISCUSSION

### A.  Fed. R. Civ. P. 55

1. *Entry of Default*

Federal Rule of Civil Procedure 55 governs default and default judgment. Rule 55(a) provides for the entry of default against a party who has failed to plead or otherwise defend against a complaint.

In this case, defendant was properly served with a copy of the summons and complaint, but failed to file an answer or responsive pleading, or to otherwise defend the lawsuit. (Doc. No. 8-5 (Declaration of Jeffrey Koberg ["Koberg Decl."]), ¶¶ 2-4 at 139.) The Court entered default against defendant Singh, and the entry of default was mailed to defendant at his address of record. (Doc. No. 7.)

Once default is entered, the defaulting party is deemed to have admitted all of the well-pleaded allegations in the complaint regarding liability, including jurisdictional averments. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Const. v. U.S Fid. and Guar.*, 661 F.2d 119, 124 (6th Cir. 1981)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is

not denied."). Accordingly, the Court accepts as true the well-pleaded allegations in DISH Network's complaint.

2. *Default Judgment*

After default has been entered, the Court may enter default judgment with or without a hearing. Fed. R. Civ. P. 55(b). Based on the well-pleaded factual allegations in the complaint, and the declarations submitted by plaintiffs in support of the motion for default judgment, the Court concludes that there is a sufficient basis for determining defendant's liability without the need for a hearing. Finally, DISH Network has submitted evidence that defendant is not an infant, an incompetent person, or on active duty in the military or otherwise exempted under the Servicemembers' Civil Relief Act. (Koberg Decl., ¶¶ 6-9 at 140.)

Even accepting the well-pleaded allegations in the complaint as true, the Court must still determine whether those facts state a claim for relief as to the cause of action for which the plaintiffs seek default judgment. *J&J Sports Productions, Inc. v. Rodriguez*, No. 1:08-CV-1350, 2008 WL 5083149, at *1 (N.D. Ohio Nov. 25, 2008) (citation omitted). Plaintiffs seek default judgment on Count III of the complaint, which alleges that defendant's intentional interception of DISH Network's satellite transmissions through the use of IKS Rocket and Fish TV violates ECPA.

EPCA prohibits unauthorized persons from intentionally intercepting, endeavoring to intercept, or procuring another to intercept, wire, oral or electronic communications. 18 U.S.C. § 2511(1)(a). "Intercept" is defined as the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). Satellite television

5

transmissions, such as those transmitted by DISH Network, constitute an "electronic communication" under ECPA. *See United States v. One Macom Video Cipher II*, 985 F.2d 258, 260 (6th Cir. 1993); *DISH Network L.L.C. v. Williamson*, No. 3:13-CV-50-TAV-CCS, 2013 WL 6119222, at *4 (E.D. Tenn. Nov. 21, 2013) (citing *One Macom Video Cipher II*, 985 F.2d at 260-61).

Based on the allegations in the complaint, which the Court accepts as true, the Court finds that plaintiffs have established the elements required to state a claim for relief under 18 U.S.C. § 2511(1)(a), and that defendant's intentional interception of DISH Network's satellite signal violates ECPA. Accordingly, plaintiffs are entitled to default judgment against Singh on Count III of the complaint.[2]

3. *Statutory Damages*

After default is entered, the well-pleaded allegations in the complaint as to liability are taken as true, but not as to damages. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d at 848 (citing *Visioneering Const.*, 661 F.2d at 124). "[W]here the damages are not for a sum certain, the Court must determine the propriety and amount of the default judgment." *J&J Sports Productions, Inc. v. Rodriguez*, 2008 WL 5083149, at *1 (citing Fed. R. Civ. P. 55(b)).

Rule 55(b)(2) permits, but does not require, the district court to conduct an evidentiary hearing to determine damages. *Arthur v. Robert James & Assoc. Assett Mgmt., Inc.*, No. 3:11-cv-460, 2012 WL 1122892, at *1 (citing *Vesligaj v. Peterson*, 331

---

[2] Other courts in the Northern District of Ohio, presented with similar fact patterns, have also awarded default judgment and statutory damages in favor of DISH Network based on ECPA violations. *See DISH Network L.L.C. v. Gohlike*, No. 3:13-cv-1796-JJH, Doc. No. 11 at 82 and 85 (N.D. Ohio Sept. 11, 2014); *DISH Network L.L.C.v. Hanna*, 1:13-cv-1797-PAG, Doc. No. 12 at 175-76 (N.D. Ohio Nov. 22, 2013); *DISH Network L.L.C. v. Mondry*, 1:11-cv-1484-SO, Doc. No. 8 at 69-70 (N.D. Ohio Nov. 29, 2011); *DISH Network L.L.C. v. Berger*, 3:11-cv-1483-JZ, Doc. No. 10 at 81-82 (N. D. Ohio Nov. 17, 2011).

F. App'x 351, 354-55 (6th Cir. 2009)). The Court may rely on affidavits submitted by plaintiffs in support of damages without a hearing. *Id*. at *2 (citation omitted).

In this case, reliance on plaintiffs' declarations in lieu of an evidentiary hearing is appropriate for at least two reasons. First, plaintiffs seek statutory, rather than actual, damages, and there is a basis for an award of statutory damages in this case. Second, defendant has been served with the complaint, the entry of default, and plaintiff's motion for default judgment at his address of record, but has failed to appear or otherwise defend this action and thus would likely not participate in an evidentiary hearing if it occurred. *See id.*

Plaintiffs seek statutory damages. Section 2520(c)(2)[3] provides that:

(c) Computation of damages.

* * * *

> (2) In any other action[4] under this section, the court may assess as damages the greater of--

>> (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or

>> (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

(Footnote added.)

---

[3] 18 U.S.C. § 2520 authorizes any person whose communication was intercepted in violation of § 2511(1)(a) to recover civil damages from the person who engaged in the violation. *See DirectTV, Inc. v. Taulbee*, No. 3:04cv083, 2005 WL 5576222, at *5 (S. D. Ohio March 4, 2005) (§ 2520(a) permits a private right of action for violation of 18 U.S.C. § 2511 (citing *DirectTV, Inc. v. Treworgy*, 373 F.3d 1124, 1128 (11th Cir. 2004))); *Williamson*, 2013 WL 6119222, at *4 (same (citing *DirectTV Inc. v. Bennett*, 470 U.S. 565, 569 (5th Cir. 2006))).

[4] Section 2520(c)(1) provides for the computation of damages when the satellite communication is not scrambled or encrypted.

An award of damages under 18 U.S.C. § 2520(c)(2) is discretionary with the Court. *Dorris v. Absher*, 179 F.3d 420, 429-30 (6th Cir. 1999). In exercising its discretion, the proper inquiry for the Court is as follows:

> (1) The court should first determine the amount of actual damages to the plaintiff plus the profits derived by the violator, if any. *See* 18 U.S.C § 2520(c)(2)(A).
>
> (2) The court should next ascertain the number of days that the statute was violated, and multiply by $100. *See* 18 U.S.C § 2520(c)(2)(B).
>
> (3) The court should then tentatively award the plaintiff the greater of the above two amounts, unless each is less than $10,000, in which case $10,000 is to be the presumed award. *See id.*
>
> (4) Finally, the court should exercise its discretion to determine whether the plaintiff should receive any damages at all in the case before it. *See* 18 U.S.C § 2520(c)(2).

*Id.*

DISH Network is not seeking actual damages. There is no evidence that defendant profited from his illegal interception of DISH Network's signal, except that he did enjoy DISH Network programming at a fraction of the cost of a DISH Network subscription fee.[5]

Under § 2520(c)(2)(B), the Court may award statutory damages of $100 per day for each violation or $10,000, whichever is greater. Statutory damages are limited to $10,000 unless the violations exceed 100 days. *Direct TV v. Kruse*, No. 3:03CV7407, 2004 WL 952844, at *2 (N.D. Ohio April 13, 2014) (citing *Smoot v. United Transp.*

---

[5] On January 1, 2012, defendant made a $25 subscription payment to IKS Rocket. (Rogers Decl., ¶ 4(a) at 68-69.) DISH Network's average monthly revenue per authorized subscriber is approximately $70 per month, which does not include access to premium channels. DISH Network's subscription fee that includes premium channels "far exceeds" the average monthly fee. Defendant's illegal interception provided him with unlimited access to DISH Network's programming, including access to DISH Network's premium channels. (Doc. No. 8-4 (Declaration of Gregory Duval ["Duval Decl."]), ¶ 18 at 138.)

*Union*, 246 F.3d 633, 643 (6th Cir. 2001)). However, there is no evidence in the record of the number of days the defendant's violations occurred. Therefore, the Court may only exercise its discretion to award no damages or $10,000. *DIRECTV, Inc. v. Hedger*, 322 F. Supp. 2d 879, 882 (W.D. Mich. 2004) (statute does not provide for an award of statutory damages falling between $100 per day for each violation or $10,000 (citing *DIRECTV v. Griffin*, 290 F. Supp. 2d 1340, 1347-48, n. 28 (M.D. Fla. 2003))).

The Court finds that it would be inappropriate to award no statutory damages in this case. By virtue of his default, defendant admits that he subscribed to IKS Rocket and Fish TV in 2012 and 2013, respectively, and used these subscriptions to illegally intercept DISH Network's programming. Although the exact period of time defendant used IKS Rocket and Fish TV cannot be determined from the evidence available, the Court can infer that defendant intentionally intercepted DISH Network's programming for more than one year. Further, the evidence presented by DISH Network shows that defendant's conduct results in both lost subscription fees and expenditures of significant resources to combat piracy. (Duval Decl., ¶ 16 at 137.) Accordingly, the Court concludes that it is appropriate to exercise its discretion and award statutory fees of $10,000 to compensate plaintiffs for all of defendant's violations of ECPA. *Hedger*, 322 F. Supp. 2d at 882-83 (statutory damages of $10,000 appropriate in the absence of evidence as to number of days violation occurred when defendant did not appear at damages hearing).

**B.     Injunctive Relief**

ECPA authorizes the Court to grant equitable relief as may be appropriate under 18 U.S.C. § 2520(b)(1):

* * * *

**(b) Relief.**--In an action under this section, appropriate relief includes--

**(1)** such preliminary and other equitable or declaratory relief as may be appropriate;

* * * *

In order to prevent future violations, plaintiffs seek an order permanently enjoining defendant from: (1) circumventing, or assisting others in circumventing, DISH Network's security system, or otherwise intercepting, or assisting others in intercepting, DISH Network's satellite signal; and (2) testing, analyzing, reverse engineering, manipulating, or otherwise extracting codes, data, or information from DISH Network's satellite receivers, smart cards, satellite data stream, or any other part or component of the DISH Network security system. (Memorandum at 55.)

To obtain a permanent injunction, plaintiffs must show that: (1) they have suffered irreparable injury; (2) remedies at law are not adequate to compensate for that injury; (3) the balance of hardship between the plaintiffs and defendant weighs in favor of a permanent injunction; and (4) the public interest would not be disserved by a permanent injunction. The decision whether to grant a permanent injunction lies within the Court's discretion. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006); *List v. Ohio Elections Comm'n*, Case No. 1:10-cv-720, --F. Supp. 3d--, 2014 WL 4472634, at *5 (S. D. Ohio Sept. 11, 2014) (citations omitted). An evidentiary hearing is not required prior to issuing a permanent injunction in the case of a default judgment because there are no factual issues in dispute. *Chanel v. Cong*, No. 10-2086, 2011 WL 6180029, at *9 (W. D. Tenn. Dec. 8, 2011) (citing *Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539, 546 (6th Cir. 2005)).

Defendant's liability has been established. The declarations submitted by plaintiffs in support of the motion also establish that DISH Network expends significant sums in security measures to prevent illegal interception, and that piracy requires constant updates at great expense to prevent unauthorized devices from intercepting DISH Network's programming. In addition to the cost of new security measures to defeat the latest piracy techniques and lost subscription revenues, piracy and its impact on DISH Network's system security interferes with DISH Network's relationship with its programming providers and subscribing customers. (*See* Duval Decl., ¶¶ 16-18 at 137-38). Defendant's illegal conduct has contributed to these injuries, which are irreparable and cannot be calculated or compensated by money damages alone. Further, the balance of hardships clearly weighs in favor of plaintiffs—defendant cannot complain of being enjoined from violating a federal law. Finally, the public is not disserved by protecting intellectual property and enforcing federal law, and may also benefit if the costs to prevent piracy are reduced.

The Court concludes that the balance of these factors weighs in favor of granting a permanent injunction, and that injunctive relief is appropriate to prevent defendant from illegally intercepting DISH Network's programming in the future and assisting others from doing so. *DISH Network L.L.C. v. Irving*, No. 8:14-cv-2199-T-33MAP, 2014 WL 6470231, at *4, (N.D. Fla. Nov. 16, 2014) (defendant permanently enjoined against future ECPA violations); *Williamson*, 2013 WL 6119222, at *6 (same); *DISH Network L.L.C. v. Hanna*, 1:13-cv-1797-PAG, Doc. No. 12 at 175-76 (N.D. Ohio Nov. 22, 2013) (same); *DISH Network L.L.C. v. Mondry*, 1:11-cv-1484-SO, Doc. No. 8 at 69-70 (N.D. Ohio Nov. 29, 2011) (same); *DISH Network L.L.C. v. Berger*, 3:11-cv-1483-

JZ, Doc. No. 10 at 81-82 (N. D. Ohio Nov. 17, 2011) (same); *but see DISH Network L.L.C. v. Jones*, Civil Action No. 12-1273, 2012 WL 2885933, at *3 (E.D. Pa. July 16, 2012) (no permanent injunction because there is no evidence that piracy will continue in future or that statutory damages are insufficient to deter future ECPA violations); *DISH Network L.L.C. v. Gohlike*, No. 3:13-cv-1796-JJH, Doc. No. 11 at  85 (N.D. Ohio Sept. 11, 2014) (economic harm caused by defendant's piracy not irreparable and "insubstantial burden" of permanent injunction is not sufficient to support issuance of an injunction).

Accordingly, defendant Donald Singh is hereby permanently enjoined from: (1) circumventing or assisting others in circumventing DISH Network's security system, or otherwise intercepting or assisting others in intercepting DISH Network's satellite signal; and (2) testing, analyzing, reverse engineering, manipulating, or otherwise extracting codes, data, or information from DISH Network's satellite receivers, smart cards, satellite data stream, or any other part or component of the DISH Network security system.

### III. CONCLUSION

For the reasons contained herein, plaintiffs' motion for default judgment as to Count III of the complaint, an award of statutory damages in the amount of $10,000, and a permanent injunction, as outlined above, is GRANTED.

Further, upon plaintiffs' representation that Counts I and II of the complaint would be dismissed if plaintiffs' motion is granted, the Court dismisses Counts I and II of the complaint with prejudice.

A Judgment Entry will be separately published.


**IT IS SO ORDERED**.

Dated: February 6, 2015

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**